IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TYSON and MELINDA SU SHELL, Personal Representatives of the Estate of HAYDEN SHELL, Deceased, | ) ) ) ) | CASE NO. 8:08CV260 |
| Plaintiffs, | ) ) | MEMORANDUM AND ORDER |
| v. | ) ) | |
| DEBRA L. SUDAN, M.D., AMY DUHACEK-STAPELMAN, M.D., SASHA SHILLCUTT, M.D., NEBRASKA MEDICAL CENTER, and DOES 1-5, | ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the Court on the Statement of Objections to Magistrate Judge's Order (Filing No. 114) submitted by Defendant The Nebraska Medical Center ("NMC"). NMC objects to the Magistrate Judge's Memorandum and Order ("M&O")(Filing No. 112), in which Judge Gossett gave the Plaintiffs leave to reconvene the deposition of Dr. Stephen Smith for not more than three hours, with all costs, including reasonable attorney's fees and expenses, to be paid by NMC.

This Court has reviewed the Plaintiffs' Motion to Compel (Filing No. 86), NMC's Motions for Attorney Fees and for Protective Order (Filing Nos. 97 and 99), the parties' briefs and indexes of evidence (Filing Nos. 87, 88, 96, 98, 100, 101, 102, 106, and 119), with special attention to the deposition of Dr. Stephen Smith ("Smith Depo.")(Filing No. 88-4), and the M&O.

## STANDARD OF REVIEW

"The district judge . . . must consider timely objections and modify or set aside any part of the [magistrate judge's nondispositve] order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72 (a).

## DISCUSSION

NMC's objections to the M&O are in three general categories. First, NMC asserts that it "met its burden of proving that the peer review privilege contained in Neb. Rev. Stat. § 71-2048 applied to the information sought by plaintiffs' counsel during the deposition of Dr. Smith." (NMC Statement of Objections, Filing No. 114 at 3.) Specifically, NMC contends that "the questions sought communications and information originating in the peer review committee" and "there has been no effective waiver of the peer review privilege[.]" (*Id*. at 4.) Second, NMC suggests that "the Magistrate's Order should be clarified as to the attorney-client objections," because "plaintiff's counsel could contend at the continuation of the deposition of Dr. Smith that the attorney-client objections were overruled by the Magistrate." (*Id*.) Third, NMC takes issue with the three-hour limit for the remainder of Dr. Smith's deposition, noting that fewer than ten questions remain that were the subject of objections at the initial deposition, and the questions, along with related follow-up questions, should take no more than one hour. (*Id.*, p.5.)

The core questions directed to Dr. Smith by Plaintiffs' counsel, to which NMC's counsel objected and instructed the witness not to answer on the basis of peer-review privilege, are the following:

> Q. Did the FMEA [failure modes and effects analysis] process identify any of the failures that ultimately led to Hayden Shell's neurological compromise?
>
> [NMC's Counsel]: Well, I'm going to interpose an objection to that question. And I believe that question delves into the RCA [root cause analysis] process which is a privileged question, and I'm not going to let the witness respond because I believe that's a privileged question.

> Q: I will make this easier by saying I am specifically not asking about RCA processes. You've testified a little earlier that FMEA is a prospective tool, not a retrospective tool. And I promise I'm not trying to trick you into giving me an answer about root-cause analysis.
> I am interested in what FMEA is, which does not have a privilege attached to it, can tell us. And so the question that I'm asking, with that caution in mind, is: Did the FMEA process in effect as of August 24th of '06 identity any of the failures that eventually harmed Hayden Shell?
>
> [NMC Counsel]: And I think in order for the witness to answer that question in the sense that you limited it to Hayden Shell that it involves the root-cause analysis process that he was involved in, and so therefore again I'm going to instruct him not to answer the question because it goes to the privilege. If you want it generic, that's fine.
>
> [Plaintiffs' Counsel]: Well, are you taking the position that because something was discussed in the root-cause analysis, therefore even parts of it that were not discussed in root-cause analysis are totally off the table?
>
> [NMC Counsel]: Yes. I think the statute is clear as to what was discussed or may have been discussed at the root-cause analysis is not subject of disclosure or discovery.

(Filing No. 88-4, Smith Depo. at 51:20 - 53:4.)

The statutory peer-review privilege is created by Neb. Rev. Stat. §§ 71-2046 to 71-2048 (Reissue 2009). Section 71-2046, in relevant part, requires licensed hospitals to create medical staff committees to review medical care and to assist physicians and surgeons in maintaining high standards of care. Section 71-2047, in relevant part, requires that physicians, surgeons, and others working in or about licensed hospitals provide such committees with facts or information about such care, and gives such persons "a privilege to refuse to disclose and to prevent any other person from disclosing the report or information, except as provided in section 71-2048." Section 71-2048, in relevant part, provides:

> The proceedings, minutes, records, and reports of any medical staff committee or utilization review committee as defined in section 71-2046,

3

> together with all communications originating in such committees are privileged communications which may not be disclosed or obtained by legal discovery proceedings unless (1) the privilege is waived by the patient and (2) a court of record, after a hearing and for good cause arising from extraordinary circumstances being shown, orders the disclosure of such proceedings, minutes, records, reports, or communications."

The Nebraska Supreme Court has held that the party claiming the privilege has the burden of proving that the information claimed to be privileged is protected. *State ex rel. AMISUB, Inc. v. Buckley,* 618 N.W.2d 684, 694 (Neb. 2000) ("[T]he party claiming the privileges under §§ 71-2047 and 71-2048 has the burden of proving that the [information is] protected . . . under one of those statutes." "[A] statutorily created privilege will be narrowly construed.").

Judge Gossett determined that NMC did not meet its burden of proving that the information claimed to be privileged was in fact protected. (M&O at 14.) That conclusion was not clearly erroneous nor contrary to law. He noted that, "It does not appear to the court that plaintiff's counsel actually asked Dr. Smith for information about any proceedings, minutes, records, reports and communications that originated in the RCA [root cause analysis] team's investigation of this incident." (M&O at 13-14). This Court agrees.

That is not to say that NMC's counsel is barred from preserving its objections at the time of the deposition, or that any information elicited from Dr. Smith will necessarily be admissible at trial. At the continuation of Dr. Smith's deposition, he will be required to respond to questions concerning NMC's FMEA process, including NMC's prospective analysis of failure modes and effects that may have relevance to the facts of Hayden Shell's treatment, whether or not such topics were also the subject of discussion at a

4

medical staff committee "peer-review" or "root-cause analysis" meeting, after the treatment occurred.

This Court does not construe the M&O as an abrogation of NMC's attorney-client privilege, and that privilege may be invoked, if necessary, when Dr. Smith's deposition is continued. For example, Plaintiffs' counsel questioned Dr. Smith about the reasons why NMC denied any breach of the standard of care during a two-year period, and NMC's counsel objected, invoking attorney-client privilege. (Smith Depo., 147:16-23; 148:1 to 149:7.) This Court does not construe the M&O as overruling those objections, or *any* objections other than the peer-review privilege as it was invoked in response to the questions actually posed by Plaintiffs' counsel during Dr. Smith's deposition.

Finally, the three hours allocated for the completion of the deposition may be far more time than is necessary for Plaintiffs' counsel to finish her line of inquiry, pursuant to Judge Gossett's Memorandum and Order. The Court trusts that counsel for all parties will use the time in good faith, and without any purpose to oppress or delay.

IT IS ORDERED:

1. The Magistrate Judge's Memorandum and Order (Filing No. 112) is not clearly erroneous, nor contrary to law, and is affirmed; and

2. The Defendant Nebraska Medical Center's Statement of Objections to Magistrate Judge's Order (Filing No. 114) is denied.

DATED this 28th day of April, 2010.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge